UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| CEREPLAST, INC. ) | |
| ) | Case No.: 14-90200-BHM-11 |
| Debtor. ) | |
| ) | |

**ORDER AUTHORIZING DEBTOR TO: (A) USE CASH COLLATERAL ON AN EMERGENCY BASIS PENDING A FINAL HEARING; (B) INCUR POSTPETITION DEBT ON AN EMERGENCY BASIS PENDING A FINAL HEARING; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF**

This matter came before this Court on the motion (the "Motion") of Cereplast, Inc., a Nevada corporation ("Debtor") requesting that this Court enter an order authorizing Debtor to: (a) use certain Cash Collateral on an emergency basis pending a Final Hearing; (b) incur Postpetition Debt from ProCap Funding, in its capacity as Postpetition Lender under the Debtor-in-Possession Loan Agreement, on an emergency basis pending a Final Hearing; and (c) grant adequate protection and provide security and other relief to Horizon Technology Finance Company in its capacity as the Prepetition Lender under the Venture Loan Agreement. Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed in **Exhibit A** attached hereto and by this reference made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date. Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

1

**EXHIBIT B**

A.     On the Filing Date, Debtor filed a voluntary petition for relief under chapter 11 of the Code. Debtor has retained possession of its property and continues to operate its business as a debtor in possession pursuant to Code §§ 1107 and 1108.

B.     The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.     No Committee has been appointed in this Case.

D     Subject to Paragraph 7 of this Order, Debtor admits, stipulates and agrees that:

1. the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among Debtor and the Prepetition Lender;

2. the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents;

3. the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt;

4. upon the entry of this Order, for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, Debtor believes the value of Prepetition Lender's interest in the Prepetition Collateral was not less than $2,800,000.00; *provided, however*, that nothing herein shall prejudice either of Prepetition Lender's right to later: (1) assert that its interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

E.     Prepetition Secured Party has not consented to the terms of this Order, but is entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363 and 364 from any decrease in the value of their respective interests in the Prepetition Collateral from and after the Filing Date.

**EXHIBIT B**

  F. Debtor needs to use Cash Collateral and incur Postpetition Debt as provided herein through the conclusion of the bankruptcy, in order to prevent immediate and irreparable harm to the estate and minimize disruption to and avoid the termination of its business operations. Entry of this Order will also enhance the possibility of maximizing the value of Debtor's assets.

  G. Debtor is unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operations of its business. Except as provided below, Debtor is unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Postpetition Lender.

  H. The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

  I. The terms and conditions of the Postpetition Documents are fair and reasonable, the best available to Debtor under the circumstances, reflect Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.

  J. Under the circumstances of this Case, this Order is a fair and reasonable response to Debtor's request for the use of Cash Collateral and to obtain Postpetition Debt, and the entry of this Order is in the best interest of Debtor's estate and its creditors.

  K. The notice provided by Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 363, 364(c) and (d) and were otherwise sufficient and appropriate under the circumstances.

  **AND THE COURT ORDERS THAT:**

  1. <u>Authorization to Use Cash Collateral.</u> Debtor is authorized to use Cash Collateral solely in accordance with the terms and provisions of this Order, including, without limitation, Paragraph 2(c) below.

**EXHIBIT B**

2. <u>Procedure for Use of Cash Collateral.</u>

(a) <u>Delivery of Cash Collateral to Postpetition Lender.</u> Debtor shall deposit all Cash Collateral now or hereafter in its possession or control into the DIP Account (or otherwise deliver such Cash Collateral to Postpetition Lender in a manner satisfactory to Postpetition Lender) promptly upon receipt thereof.

(b) <u>Cash Collateral in Postpetition Lender's Possession.</u> Postpetition Lender is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or control which constitute Aggregate Collateral or proceeds thereof.

(c) <u>Application of Cash Collateral.</u> Postpetition Lender is authorized to and shall limit the use of all Cash Collateral now or hereafter in Postpetition Lender's possession or control as follows: payment of costs associated with the Debtor's operations, including payroll and senior management obligations; rent and vendor payments; utilities; interest payments to ProCap; costs associated with public companies; professional fees; and potential restructuring costs.

(d) <u>Prohibition Against Use of Cash Collateral.</u> Except as provided in Paragraph 1 and 2 of this Order, Debtor will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363: (1) Postpetition Lender has consented to such order; or (2) at the time such an order is entered, there is no Postpetition Debt outstanding and no obligation of Postpetition Lender to extend Postpetition Debt.

3. <u>Authorization To Incur Postpetition Debt.</u>

(a) <u>Postpetition Documents</u>. Debtor is hereby authorized and has agreed to: (1) execute the Postpetition Documents, including all documents that Postpetition Lender reasonably requests to implement the transactions contemplated by the Postpetition

4

**EXHIBIT B**

Documents; and (2) perform its obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order. Upon execution and delivery thereof, the Postpetition Documents shall constitute valid and binding obligations of Debtor enforceable in accordance with their terms. To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order shall govern and control.

(b) <u>Permitted Uses of Postpetition Debt.</u> Debtor is authorized and has agreed to incur Postpetition Debt solely: (1) in accordance with the terms and provisions of this Order, (2) to pay the expenses enumerated in the Interim Budget (attached as **Exhibit C** to Debtor's First Day Motion for DIP Financing), to the extent required, including the Carveout, as and when such expenses become due and payable, and (3) to pay the Postpetition Charges. If Postpetition Lender advances monies to Debtor and Debtor uses such monies other than in accordance with the terms or provisions of this Order, such advances shall be considered Postpetition Debt for purposes of this Order.

(c) <u>Certain Material Terms of Postpetition Debt.</u>

(i) <u>Maximum Amount.</u> The maximum principal amount of Postpetition Debt outstanding shall not at any time exceed the DIP Revolver Commitment; <u>provided, however</u> that pending the Final Hearing, the maximum principal amount of Postpetition Debt outstanding shall not at any time exceed the Interim DIP Amount of $1,000,000.00.

(ii) <u>Interest</u>. The Postpetition Debt shall bear interest at a per annum rate equal to five percent (5%.)

(iii) <u>Prepayment Fee</u>. A fee in the aggregate amount of $250,000 shall be payable to Postpetition Lender in the event that the Postpetition Debt is repaid with amounts other than proceeds of a sale of Debtor's assets to Postpetition Lender.

(d) <u>Superpriority Administrative Expense Status; Postpetition Liens.</u> The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Case that

5

**EXHIBIT B**

are incurred under any provision of the Code. In addition, Postpetition Lender is hereby granted the Postpetition Liens to secure the Postpetition Debt. The Postpetition Liens: (1) are in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3) and 364(d), are Priority Liens (subject only to Permitted Priority Liens and the Prepetition Liens) without any further action by Debtor or Postpetition Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case; (5) shall not be subject to Code § 510(c); and (6) upon entry of the Final Order, shall not be subject to any landlord's lien, bailee's rights, right of distraint or levy, security interest or other interest that any landlord, bailee, warehousemen or landlord's mortgagee may have in the Aggregate Collateral located on such leased premises. Notwithstanding the foregoing, Debtor shall execute and deliver to Postpetition Lender such financing statements, mortgages, instruments and other documents as Postpetition Lender may request from time to time, and any such documents filed by Postpetition Lender shall be deemed filed as of the Filing Date. Further, all Prepetition Third Party Documents shall be deemed to be for the benefit of Postpetition Lender without further action by any party.

(e) <u>Prohibition Against Additional Debt.</u> Debtor will not incur or seek to incur debt secured by a lien which is equal to or superior to the Prepetition Lendor the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364: (1) Postpetition Lender has consented to such order; or (2) at the time such an order is entered, there is no Postpetition Debt outstanding, and no obligation of Postpetition Lender to extend Postpetition Debt.

**EXHIBIT B**

4. <u>Adequate Protection of Interests of Prepetition Lenders in the Prepetition Collateral and the Prepetition Liens.</u> The Prepetition Lender is entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362, 363 or 364 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date).

(a) <u>Priority of Prepetition Liens/Allowance of Prepetition Lender's Claim</u>. Subject to the terms of Paragraph 7 of this Order: (1) the Prepetition Liens shall constitute Priority Liens, subject only to the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) Prepetition Lender's claims with respect to the Prepetition Debt shall for all purposes constitute an allowed claim within the meaning of Code § 506 in an amount not less than $2,800,000.00, exclusive of accrued and accruing Allowable 506(b) Amounts.

(b) <u>Allowed Code § 507(b) Claim.</u> If and to the extent the adequate protection of the interests of Prepetition Secured Parties in the Prepetition Collateral granted pursuant to this Order proves insufficient, they shall each have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Case that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b).

5. <u>Carveout.</u>

(a) <u>Carveout Terms.</u> The Carveout with respect to each Carveout Professional: (1) shall equal the aggregate amount of allowed fees and expenses for such Carveout Professional that accrue during the period commencing on the Filing Date and ending on the termination of the bankruptcy (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable

7

**EXHIBIT B**

lien in favor of the Prepetition Lender or the Postpetition Lender) held by such Carveout Professional before such payments are made from proceeds of the Postpetition Debt or the Aggregate Collateral. Further, Postpetition Lender shall have the right to reserve against the DIP Revolver Commitment an amount equal to the sum of the aggregate amount of unpaid fees and expenses set forth in the Budget for the Carveout Professionals. Except as set forth in the preceding sentence, Postpetition Lender shall have no obligation to fund any fees or expenses of Carveout Professionals accrued on, prior to, or after the termination of the bankruptcy.

(b) <u>Carveout Usage.</u> No portion of the Carveout and no Postpetition Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including Debtor, any Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Prepetition Lender's or Postpetition Lender's interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Prepetition Lender's or Postpetition Lender's enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Prepetition Lender's and Postpetition Lender's consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Prepetition Lender or Postpetition Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Prepetition Lender and Postpetition Lender; <u>provided, however</u>, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Postpetition Lender.

8

**EXHIBIT B**

(c) <u>Carveout Procedure</u>. In accordance with the Debtor-in-Possession Loan Agreement, Debtor shall provide to the Postpetition Lender a written report (the "<u>Carveout Report</u>"), in which Debtor discloses its then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30 day period following the date of such Carveout Report. Nothing herein shall be construed as consent by Prepetition Lender or Postpetition Lender to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Prepetition Lender and Postpetition Lender to object to the allowance and payment of such fees, costs or expenses, or the right of Postpetition Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

6. <u>No Surcharge</u>. In the exercise of its business judgment, Debtor agrees that effective upon entry of the Final Order, there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Prepetition Lender and Postpetition Lender. Further, Debtor represents that the Budget contains all expenses that are reasonable and necessary for the operation of its businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Prepetition Lender or Postpetition Lender under Code § 506(c). Therefore, effective upon entry of the Final Order Debtor (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted

**EXHIBIT B**

against the Prepetition Lender, Postpetition Lender, or the Aggregate Collateral. In reliance on the foregoing, Prepetition Lender and Postpetition Lender have agreed to the entry of this Order.

7. <u>Reservation of Rights; Bar of Challenges and Claims</u>. The stipulations and representations contained in this Order, including, without limitation, in Paragraph D, shall be binding on all Challenge Parties, unless and solely to the extent that (i) Debtor receives written notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a) <u>Challenge Procedure.</u> During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must notify Debtor during the Investigation Period of its demand that Debtor initiates an action or adversary proceeding relating thereto and from the date that Debtor is so notified, Debtor shall have five (5) days to notify the Challenge Party of whether Debtor intends to initiate such action and ten (10) days to initiate such action. If Debtor notifies such Challenge Party that Debtor does not intend to initiate an action or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to initiate an action or adversary proceeding. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court. Debtor, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of its business judgment and subject to any applicable further order of court.

(b) <u>Bar of Challenges and Claims.</u> If Debtor does not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Prepetition Lender or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of the Prepetition Lender shall be deemed to be allowed for all purposes in this Case and shall not be subject to challenge by

10

**EXHIBIT B**

any party in interest as to extent, validity, priority or otherwise, and (2) Debtor and its estate shall be deemed to have waived, released and discharged Prepetition Lender and its officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise.

8. <u>Right to Credit Bid.</u> In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant to Code § 363(k), (a) Postpetition Lender shall have the right to use the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, and (b) Prepetition Lender shall have the right to use the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, so long as any such credit bid by Prepetition Lender provides for cash payment, assumption, or other satisfaction of the Prepetition Debt.

9. <u>Plan.</u> Unless Postpetition Lender consents thereto, Debtor shall not seek entry of an order confirming a plan in this Case unless adequate protections for the repayment of the Postpetition Debt are in place, notwithstanding anything to the contrary in any such order confirming a plan.

10. <u>Waiver of Right to Return/Consent to Setoff.</u> Debtor hereby waives its rights: (a) to return any of the Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9) (provided that nothing contained herein shall require Debtor to oppose any claims made thereunder); and (c) to consent to setoff pursuant to Code § 553 (provided that nothing contained herein shall require Debtor to oppose any setoff asserted thereunder).

**EXHIBIT B**

11. <u>No MarshaLling.</u> None of Prepetition Lender, Postpetition Lender or any of the Aggregate Collateral shall be subject to the doctrine of marshalling.

12. <u>Postpetition Charges.</u> All Postpetition Charges shall be promptly paid by Debtor in accordance with this Order and the Postpetition Documents, without need for filing an application with the Court for approval or payment thereof.

13. <u>Force and Effect of Prepetition Documents.</u> Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt. To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order shall govern and control.

14. <u>No Waiver.</u> Neither Prepetition Lender nor Postpetition Lender shall be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Documents, the Postpetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Prepetition Lender or Postpetition Lender, as applicable, and directed to Debtor. No failure of Prepetition Lender or Postpetition Lender to require strict performance by Debtor (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Prepetition Lender or Postpetition Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of Prepetition Lender and Postpetition Lender in the exercise of any right or remedy under this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Prepetition Lender of any of its rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of its interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

12

**EXHIBIT B**

15. "Responsible Person." By taking any actions pursuant to this Order, Postpetition Lender shall not: (a) be deemed to be in control of the operations or liquidation of Debtor; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtor. The foregoing provision of this paragraph shall not be effective until entry of the Final Order.

16. Amendments. Debtor and Postpetition Lender may enter into amendments or modifications of the Postpetition Documents or the Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest, and (b) notice of any such amendment or modification is filled with this Court.

17. Proof of Claim. The Prepetition Lender shall not be required to file a proof of claim with respect to any of the Prepetition Debt, and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof.

18. Binding Effect. Except as provided in Paragraph 7 herein, this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 7 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order (including, without limitation, Paragraphs 2(d), 3(e) and 7); and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used or Postpetition Debt incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims

13

**EXHIBIT B**

and other benefits shall be governed in all respects by the original provisions of this Order, and Postpetition Lender shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein, with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

19. <u>Survival.</u> The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the Case in this Court. The terms and provisions of this Order, including, without limitation, the rights granted Postpetition Lender under Code §§ 364(c) and (d), shall continue in full force and effect until all of the Aggregate Debt is indefeasibly paid in full in cash and discharged.

Dated: February ___, 2014

_____
**Honorable Basil Lorch III**
**United States Bankruptcy Judge**

**EXHIBIT B**

## EXHIBIT A

## DEFINED TERMS

1. *Aggregate Collateral*. Collectively, the Prepetition Collateral and the Postpetition Collateral.

2. *Aggregate Debt*. Collectively, the Prepetition Debt and the Postpetition Debt.

3. *Allowable 506(b) Amounts*. To the extent allowable under Code § 506(b), interest at the default rate of interest as set forth in the Prepetition Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Prepetition Lender in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Prepetition Lender in the Case, including in defending any Challenge.

4. *Budget*. The budget attached to Debtor's First Day Motion for DIP Financing as **Exhibit C**, as amended, modified or supplemented from time to time, as may be agreed to by Postpetition Lender.

5. *Carveout*. Collectively, (a) all fees required to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (b) with respect to each Carveout Professional, the allowed fees and disbursements of such Carveout Professional from time to time pursuant to Code § 330, in the aggregate amount set forth in Paragraph 5 of this Order.

6. *Carveout Professionals.* Debtor's counsel, Austin Legal Group, APC, the United States Trustee, and any employed consultants for the purpose of reorganization as approved by this Court.

7. *Case)*. The chapter 11 case or any superseding chapter 7 case of Debtor.

## EXHIBIT B

8. ***Cash Collateral***. All "cash collateral," as that term is defined in Code § 363(a), in which Prepetition Lender and Postpetition Lender have an interest, all deposits subject to setoff rights in favor of Prepetition Lender and Postpetition Lender, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

9. ***Challenge***. A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Prepetition Lender, which the Committee, or another party-ininterest may bring, in accordance with Paragraph 7 of this Order.

10. ***Challenge Party***. The Committee, any Trustee, or other party-in-interest with the requisite standing.

11. ***Code***. The United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

12. ***Committee***. Any official creditors' committee appointed to represent unsecured creditors in this Case pursuant to Code § 1102.

13. ***Debtor-in-Possession Loan Agreement***. That certain Debtor-in-Possession Credit Agreement dated as of February/March ___, 2014, by and between Debtor and Postpetition Lender, as amended (attached as **Exhibit A** to Debtor's First Day Motion for DIP Financing), modified, supplemented, replaced or refinanced from time to time.

14. ***DIP Account.*** The Chapter 11 DIP Account located at East West Bank.

15. ***DIP Revolver Commitment***. The "DIP Revolver Commitment" as defined in the Debtor-in-Possession Loan Agreement in the amount of $1,000,000.

16. ***Event of Default***. At Postpetition Lender's election, (a) the occurrence and continuance of any "Event of Default" first arising after the Filing Date under and as defined in the

16

**EXHIBIT B**

Debtor-in-Possession Loan Agreement; and (b) Debtor's failure to comply with the covenants or perform any of their obligations in strict accordance with the terms of this Order.

17. *Filing Date*. February 10, 2014.

18. *Final Hearing*. The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

19. *Final Order*. A final order authorizing Debtor to use Cash Collateral and incur Postpetition Debt entered at or in connection with the Final Hearing.

20. *Investigation Period*. The period from the Filing Date until the date that is the earliest of (1) seventy-five (75) days after the Filing Date or (2) sixty (60) days after the date that a Committee is formed, if any.

21. *Obligations*. The "Obligations," as that term is defined in the Postpetition Credit Agreement.

22. *Permitted Priority Liens*. Collectively, (a) the Carveout, and (b) liens in favor of third parties upon the Prepetition Collateral, to the extent that such third-party liens, as of the Filing Date: (1) had priority under applicable law or by agreement over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date.

23. *Postpetition Charges*. Interest at the applicable rate of interest under the Postpetition Credit Agreement and all fees, costs, and expenses provided for in the Postpetition Credit Agreement, including, without limitation, those incurred by Postpetition Lender (prepetition and postpetition) in connection with documentation, negotiation, administration and enforcement of the Postpetition Debt (regardless of whether any such fees, costs, interest and other charges are included in the Budget).

24. *Postpetition Collateral*. All of the real and personal property of Debtor of any description whatsoever, wherever located and whenever arising or acquired, including all cash,

accounts, inventory, equipment, fixtures, chattel paper, general intangibles (including, solely with respect to the "DIP Loans" (as defined in the Debtor-in-Possession Loan Agreement ) upon entry of the Final Order, claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Debtor-in-Possession Loan Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

25. ***Postpetition Debt***. All indebtedness or obligations of Debtor to Postpetition Lender incurred on or after the Filing Date pursuant to the Debtor-in-Possession Loan Agreement, this Order or otherwise, including all Obligations and any advances made by Postpetition Lender to pay the Carveout.

26. ***Postpetition Documents***. The Debtor-in-Possession Loan Agreement and the "Related Documents" (as that term is defined in the Debtor-in-Possession Loan Agreement).

27. ***Postpetition Lender***. ProCap Funding, a Delaware company, in its capacity as lender under the Debtor-in-Possession Loan Agreement, together with such other holders or assignees of all or a portion of the Postpetition Debt from time to time.

28. ***Postpetition Liens***. Priority Liens in the Aggregate Collateral, subject only to Permitted Priority Liens and the Prepetition Liens.

29. ***Prepetition Collateral***. All of the "Collateral" (as that term is defined in the Prepetition Credit Agreement) existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

30. ***Prepetition Credit Agreement***. That certain Venture Loan Agreement dated December 21, 2010 (as amended, supplemented or otherwise modified on November 27, 2012), by and among Debtor and Prepetition Lender.

18

**EXHIBIT B**

31. **Prepetition Debt**. (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including, without limitation, all "Obligations" (as defined in the Debtor-in-Possession Loan Agreement), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, plus (b) all Allowable 506(b) Amounts.

32. **Prepetition Documents**. The Prepetition Venture Loan Agreement and the "Loan Documents" (as that term is defined in the Venture Loan and Security Agreement).

33. **Prepetition Lender**. Horizon Technology Finance Corporation, in its capacity as the lender under the Prepetition Venture Loan Agreement, together with such other holders or assignees of all or a portion of the Prepetition Debt from time to time.

34. **Prepetition Liens**. Prepetition Lender's asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

35. **Prepetition Secured Party**. Horizon Technology Financing Company.

36. **Prepetition Third Party Documents**. Collectively, Debtor's deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, bailment agreements, insurance policies, contracts or other similar agreements in which Prepetition Lender has an interest or from which Prepetition Lender otherwise benefits.

37. **Priority Liens**. Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

38. **Replacement Liens**. Priority Liens in the Postpetition Collateral granted to Prepetition Lender pursuant to this Order, subject only to the Permitted Priority Liens.

39. **Trustee**. Any trustee appointed or elected in the Case.

**EXHIBIT B**